# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5973 | **DATE** | 10/24/2003 |
| **CASE TITLE** | Manuel Mata vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion for summary judgment [15-1] is granted. Plaintiff's motion for summary judgment [12-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 27 2003 date docketed | 17 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/24/03 date mailed notice | |
| IS | courtroom deputy's initials | 03 OCT 24 PM 4:27 Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MANUEL MATA, )
)
                Plaintiff, ) Case No. 02 C 5973
)
v. ) Magistrate Judge
) Martin C. Ashman
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
                Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Manuel Mata, seeks judicial review of the final decision of Defendant, Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"), who determined that Mata was not entitled to Disability Insurance Benefits ("DIB")[1] and Supplemental Security Income ("SSI"),[2] pursuant to 42 U.S.C. § 405(g)[3]. Before this Court is Mata's Motion for Summary Judgment, which requests this Court to reverse and remand the Administrative Law Judge's ("ALJ") decision that Mata was not entitled to DIB or SSI, and the

---

[1] Disability Insurance Benefits provide a minimum level of benefits to persons under age 65 who: a) have a disability as defined in 20 C.F.R. § 404.1505; and b) qualify as fully insured by having sufficient Social Security earnings as provided in 20 C.F.R. § 404.130. *See* 20 C.F.R. § 404.320(b).

[2] Supplemental Security Income provides financial assistance to needy individuals who are 65 years of age or older, are blind, or are 18 years of age and permanently and totally disabled. 42 U.S.C. §§ 1381, 1382.

[3] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of a notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides . . . ." 42 U.S.C. § 405(g).

17

Commissioner's Motion for Summary Judgment, which requests this Court to affirm the ALJ's decision.[4]

## I. Procedural History

On October 25, 2000, Mata applied for DIB and SSI alleging he has been disabled since February 15, 1995. (R. at 111.) On January 16, 2001, both of Mata's applications were denied, and on April 4, 2001, Mata's request for reconsideration was also denied. (R. at 64, 72.) On April 18, 2001, Mata requested a hearing before an ALJ. The ALJ's hearing was conducted on January 31, 2002, where Mata testified as did Sylvestria Yen, Mata's wife, and Meyer Klien, a Vocational Expert ("VE"). (R. at 21-49.) On February 22, 2002, the ALJ issued her decision which stated that Mata was not disabled and therefore not eligible for DIB or SSI. (R. at 13-20.) On March 19, 2002, Mata requested review of the ALJ's decision by the Appeals Council. (R. at 9-10.) On August 2, 2002, the Appeals Council denied Mata's request for review and the ALJ's decision became final. (R. at 7-8.) Mata now seeks judicial review of that decision.

## II. Facts and Medical History

Mata was born on February 10, 1957, and was forty-five years of age when the ALJ issued her decision. (R. at 25.) Mata testified that he has a sixth grade education, was educated in Mexico, and cannot read English but can write more than his name in English. (R. at 25, 131.) Mata also testified that he has worked as a machine operator, but indicated that he has been unable to work since February 1995 due to back pain. (R. at 26, 132.)

---

[4] The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

Mata's injuries initially began in May 1990 when Mata fell at work while running away from a malfunctioning machine. (R. at 183.) Mata underwent surgical correction of a herniated disc in 1992, but re-injured his back at work in February 1995. (R. at 326-27.) Mata subsequently received conservative treatments including physical therapy and injections, which brought little relief. (Id.) In March 1995, Mata's treating orthopedic surgeon, Dr. Gorski, released Mata to return to light duty. (R. at 280.)

In August 1995, Mata was seen for a physical capacity evaluation. (R. at 307.) According to Mata's demonstrated performance, his physical abilities fell between the light and light-medium work levels. (Id.)

In September 1995, occupational health specialist Dr. Krieger examined Mata on a follow-up visit and stated Mata could return to his past work if Mata was provided with an elevated stool. (R. at 305-06.) Dr. Krieger also recommended a lifting restriction of twenty-five pounds. (R. at 306.) In October 1995, Dr. Krieger suggested that stress relief mats on the concrete floor at Mata's work station could be of some benefit. (R. at 304.) Mata indicated he received relief from Flexeril, which had not earlier been effective, and based on this fact, Dr. Krieger prescribed Flexeril for Mata. (R. at 301, 305.)

In January 1996, Dr. Gorski suggested that further diagnostic studies should be obtained if Mata wished to consider surgery. (R. at 276.) Alternatively, Mata could live with the discomfort and limit his activities to light to medium labor. (Id.) In March 1996, Dr. Gorski reported that Mata appeared to be managing reasonably well with Naprosyn, and if Mata was reasonably comfortable with Naprosyn, there was not any obvious immediate need for surgical intervention. (R. at 275.) In June 1996, Dr. Gorski reported that Mata was able to control his

discomfort and pain with Naprosyn and reduced activities, and recommended that Mata consider having a functional capacities evaluation. (Id.) In September 1996, Dr. Gorski refused to release Mata to any type of work duties without a functional capacities evaluation. (R. at 274.)

In October 1996, Mata underwent a work capacity evaluation. (R. at 326.) Based on Mata's performance during the work capacities evaluation, the score team recommended that Mata was within the light level, or the ten-twenty pounds category, and that Mata displayed inconsistencies related to his claim of pain. (R. at 330.)

June 1997 progress notes from Woodstock Medical Center indicated that Mata's condition was controlled with reduced activities and occasional use of some pain medication, primarily Naprosyn once or twice daily. (R. at 331.) December progress notes indicated that Mata reported that he experienced an increase in pain during a two-week period in December 1997, but the pain had resolved prior to Mata's visit to the doctor. (R. at 332.) Dr. Gorski ordered an MRI because his physical examination revealed some motor weakness. (Id.) The MRI revealed degenerative disk problems at L4-5, the area of Mata's earlier diskectomy. (R. at 333.) In February 1998, Dr. Gorski noted that Mata's back pain had been somewhat progressively getting worse, but yet controlled with rest, decreased physical activities, and nonsteroidal anti-inflammatories. (Id.) In March 1998, Mata reported he attempted to work for one day but could not tolerate standing for an hour or two before experiencing severe pain in his lower back. (Id.) In October 1998, Dr. Gorski completed a report of incapacity for the Illinois Department of Public Aid, describing Mata as being more than fifty percent reduced in his capacity to walk and stand and able to lift no more than ten pounds repeatedly. (R. at 339-42.)

Mata testified that he was treated by Dr. Nahra after Dr. Gorski moved. (R. at 30.) In November 1999, Dr. Nahra stated in his progress notes on Mata that Mata could work at medium level of physical activity. (R. at 353.) An April 2000 EMG Nerve Conduction Study of Mata's lower extremities was essentially normal. (R. at 412.) Mata submitted evidence that indicated he saw a chiropractor on a regular basis beginning in November 2000. (R. at 426-56.)

Meyer Klein testified as a VE at Mata's administrative hearing. The ALJ posed a hypothetical question, directing the VE to assume an individual with Mata's vocational characteristics, including the inability to speak, read, or write English, who could: lift up to twenty pounds occasionally; frequently sit, stand, or walk as required; occasionally bend, crouch, or climb. (R. at 44.) The VE identified thousands of jobs in the Chicago region the hypothetical individual could perform. (R. at 45.) When the ALJ added a limitation against twisting of the trunk, the VE testified that the cafeteria attendant job would be eliminated and the other jobs would be reduced by fifty percent. (R. at 46.) If the hypothetical individual was able to change position from sitting to standing and vice versa every forty-five minutes to an hour, in addition to the limitation set forth in the original hypothetical, the VE testified that the solderer job would be eliminated and the other jobs would be reduced by twenty-five percent from the original numbers cited. (Id.)

### III. Administrative Law Judge's Findings

The ALJ made the following specific findings (as taken verbatim from her February 22, 2002 decision):

    1.    The claimant last met the disability insured status requirement on December 31, 2000.

2. The claimant has not engaged in any disqualifying substantial gainful activity.

3. The claimant has the following medically determinable impairment: degenerative disc disease. The claimant's impairment significantly limits his ability to perform basic work activities.

4. The severity of the claimant's impairment does not meet the requirements or equal the level of severity contemplated under any listing included in Appendix 1 to Subpart P, Regulations No. 4.

5. The claimant's complaints of disabling symptoms and limitations are not entirely credible for the reasons set forth in the body of this decision.

6. After carefully considering the entire record, a finding is warranted that the claimant's medically determinable impairments preclude the following work related activities: lifting more than 20 pounds occasionally or more than 10 pounds frequently with the option to change position between sitting and standing every 45 minutes to an hour and crouching, bending or climbing no more than occasionally. Based on those limitations, the claimant's residual functional capacity is for a limited range of light work.

7. The claimant is unable to perform any past relevant work.

8. The claimant is within the "younger" age category.

9. The claimant is unable to communicate effectively in English.

10. The claimant's past relevant work provided some skills, but those skills do not transfer to other occupations within the claimant's residual functional capacity.

11. Considering the effect of the claimant's additional limitations on the occupational base of jobs contemplated under rule 202.16 there is still a significant number of jobs existing in the regional economy that the claimant can

> perform; specifically, so[l]derer (937 jobs), production
> assembler (2,250 jobs), packing line worker (1,875 jobs)
> and cafeteria attendant (3,750 jobs).
>
> 12.  The claimant is not under a "disability" for purposes of
> titles II and XVI of the Social Security Act.

(R. at 19-20.)

## IV. Discussion

Social Security regulations require that a claimant suffer from a disability within the meaning of the Social Security Act in order to receive DIB. Disability is defined as:

> [t]he inability to do any substantial gainful activity[5] by reason of
> any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.
> To meet this definition, you must have a severe impairment(s),[6]
> that makes you unable to do your post relevant work . . . or any
> other substantial gainful work that exists in the national
> economy. . . . If we find that you cannot do your past relevant
> work, we will use the same residual functional capacity assessment
> and your vocational factors of age, education, and work experience
> to determine if you can do other work.

20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §416(I)(1). The determination of disability involves both medical and vocational issues and requires a five step process. The five steps are:

---

[5] Substantial Gainful Activity means work that: (1) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

[6] A Disabling Impairment is defined as "an impairment (or combination of impairments) which, of itself, is so severe that it meets or equals a set of criteria in the Listing of Impairments in appendix 1 of this subpart or which, when considered with your age, education, and work experience, would result in a finding that you are disabled under § 404.1594." 20 C.F.R. § 404.1511(a).

> Step 1: Is the Claimant presently employed? If yes, the claim is
> disallowed; if no, the inquiry proceeds to step two.
>
> Step 2: Is the Claimant's impairment "severe," and expected to last
> at least 12 months? If no, the claim is disallowed; if yes, the
> inquiry proceeds to step three.
>
> Step 3: Does the impairment meet or exceed one of a list of
> specific impairments? If yes, the Claimant is automatically
> disabled; if no, the inquiry proceeds to step four.
>
> Step 4: Is the Claimant able to perform her past relevant work
> experience? If yes, the claim is denied; if no, the inquiry proceeds
> to step five where the burden shifts to the Commissioner.
>
> Step 5: Is the Claimant able to perform any other work within her
> residual functional capacity in the national economy? If yes, the
> claim is denied; if no, the Claimant is disabled.

*See* 20 C.F.R. § 404.1520; *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994). The ALJ used this five-step process in making her findings, and determined at step three that Mata was not disabled because the "severity of [his] impairment does not meet the requirements or equal the level of severity contemplated under any listing included in Appendix 1 to Subpart P, regulations No. 4." (R. at 19.) Furthermore, relying on Mata's residual functional capacity and the VE's testimony, the ALJ concluded, at step five, that Mata was not disabled because "there is still a significant number of jobs existing in the regional economy that [he] can perform . . . ." (R. at 20.)

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). However, the scope of review

this Court must use is quite limited; the Commissioner's decision must be affirmed so long as it is supported by substantial evidence. *See Herron*, 19 F.3d at 333.

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ's finding must be supported by more than a scintilla of evidence, but may be supported by less than the full weight of the evidence. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). The reviewing court must consider all evidence on the record; however, it may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ, because the ALJ must resolve all factual issues and evidentiary conflicts. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993); *Delgado*, 782 F.2d at 82. Therefore, the critical question for this Court is not whether Mata was disabled but whether there is substantial evidence in the record to support the Commissioner's decision. If reasonable minds could disagree on whether Mata is disabled, we must affirm the ALJ's decision denying benefits. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

Mata contests the ALJ's decision that he was not disabled under Titles II and XVI of the Social Security Act. (R. at 20.) First, Mata claims that the ALJ improperly discounted his testimony related to pain, arguing that the ALJ's decision was unreasonable because she ignored Mata's chiropractic care for two years, the testimony of Mata's wife, and the medical evidence contained in exhibit numbers sixteen (f) and twenty-two (f). The Commissioner responds that, given the record as a whole, the ALJ reasonably weighed the evidence and concluded that Mata could perform a limited range of light work. Next, Mata claims that the ALJ failed to obtain the

testimony of a medical advisor as required by SSR 83-20, but the Commissioner claims that SSR 83-20 does not apply to this case because Mata was not found to be disabled. Finally, Mata argues that the hypothetical question posed by the ALJ to the VE did not fully set forth Mata's impairments. However, the Commissioner argues that the ALJ properly relied on the VE's testimony because the hypothetical question was supported by the medical evidence in the record as a whole. Each of these arguments will be addressed in turn.

A. **There Is Substantial Evidence In The Record To Support The ALJ's Conclusion That Mata Was Not Disabled Because He Could Perform A Limited Range Of Light Work.**

Mata claims that the ALJ improperly discounted his testimony related to pain in that the ALJ did not discuss all relevant evidence; specifically, Mata claims that the ALJ ignored Mata's chiropractic care for two years, the testimony of Mata's wife, and the medical evidence contained in exhibit numbers sixteen (f) and twenty-two (f). Furthermore, Mata states that the evidence related to the seven factors required by SSR 96-7p has been ignored or misrepresented in the ALJ's decision.

SSR 96-7 is a policy interpretation ruling that addresses the ALJ's responsibility in making a credibility finding regarding a claimant's statements about pain or other symptoms and its functional effects. *Hert v. Barnhart*, 234 F. Supp. 2d 832, 838 (N.D. Ill. 2002). According to SSR 96-7p, a claimant's statements about his symptoms is not enough to establish the existence of a physical impairment, but once it has been determined that an underlying physical or mental impairment could reasonably be expected to produce the pain, the adjudicator must evaluate the extent to which the pain limits the claimant's basic work activities. 20 C.F.R. § 404.1529(c).

Whenever the claimant's statements about pain are not substantiated by the objective medical evidence, the adjudicator must make a finding of credibility of the claimant's statements based on a consideration of the entire case record. *Id.* Specifically, the ALJ must consider:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* Specifically, the policy interpretation states that it is not sufficient for the ALJ to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "SSR 96-7p requires the ALJ to consider the claimant's 'statements about symptoms with the rest of the relevant evidence in the case record' and to consider the entire case record, including

objective medical evidence, and other relevant evidence in coming to a credibility determination." *Hert*, 234 F. Supp. 2d at 838-39 (quoting SSR 96-7p ¶¶ 1-4). However, SSR 96-7p does not require an ALJ to analyze and elaborate on each of the seven factors set forth when making a credibility determination. *Brider v. Apfel*, 18 F. Supp. 2d 900, 907 (N.D. Ill. 1998). SSR 96-7p requires an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. In assessing alleged contradictions in the ALJ's determination of credibility, a reviewing court is to apply a commonsensical reading to determine if the finding was supported by substantial evidence in the record as a whole. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

This Court will not overrule the ALJ's credibility findings unless they are patently wrong, because the ALJ is in the best position to see and hear the witnesses. *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002). Therefore, the ALJ is afforded special deference. *Shramek*, 226 F.3d at 811. In this case, the ALJ reasonably weighed the evidence in accordance with SSR 96-7p and reasonably concluded that Mata could perform a limited range of light work; therefore, the ALJ's decision is affirmed.

The ALJ concluded that Mata could lift no more than 20 pounds occasionally and more than 10 pounds frequently with the option to change position between sitting and standing every 45 minutes to an hour; and only occasionally could crouch, bend, or climb. (R. at 16.) This constitutes a finding of light work. The ALJ made this reasonable determination after reviewing Mata's alleged symptoms, the medical evidence, and Mata's daily activities.

The ALJ discusses Mata's medical treatment in detail. In short review, Mata was diagnosed with degenerative disk disease in February 1995, and over the next three years, was treated conservatively with physical therapy, epidural injections, and medication. According to Dr. Gorski, Mata was found to be reasonably comfortable as a result of this treatment. In October 1999, an MRI indicated that there was a posterior bulge in the lumbar spine at the location of Mata's September 1992 surgery, and an EMG in April 2000 showed that Mata's lower extremities were normal. Mata was also diagnosed with a history of low back pain in November 1999 and sciatica in December 2000.

The objective medical evidence conflicts with Mata's claim that he is disabled; therefore, there is a credibility issue present in the case. The ALJ examined many of the factors presented in SSR 96-7p in order to evaluate Mata's claims of pain. Specifically, the ALJ noted that Mata claimed that he could only sit for 20 minutes at a time, yet was repeatedly observed sitting for longer periods during the hearing, even though he was invited to stand if necessary. Mata also claimed that he has difficulty walking, yet he walked quickly when observed by Social Security Administration personnel. Furthermore, every time Mata has undergone a functional capacity evaluation he has shown clear signs of symptom magnification. In addition, the ALJ noted that Mata was on Naprosyn, which he told Dr. Gorski helped to manage his pain. Finally, the ALJ examined Mata's daily activities and concluded that they could not be objectively verified from the evidence presented nor did they agree with the medical evidence presented. The ALJ concluded that Mata's claim of limited daily activities were outweighed by other factors.

Mata claims that the ALJ did not reach a reasonable conclusion because she did not mention Mata's chiropractic care, the testimony of Mata's wife, or the medical evidence in exhibit

numbers sixteen (f) and twenty-two (f). The ALJ recognized that Mata did claim that he suffered from debilitating back pain, but in evaluating the evidence, the ALJ found that the medical evidence outweighed Mata's claims. As for Mata's chiropractic care and the testimony of his wife, both of these pieces of evidence are consistent with Mata's claim of debilitating back pain, which was discussed by the ALJ. The ALJ does not have to discuss specific reasons for rejecting Mata's wife's testimony if the issues raised by Mata's wife were discussed when the ALJ discussed Mata's testimony. *See Herron*, 19 F.3d at 337 (the ALJ did not err in failing to mention reasons for rejecting claimant's wife's testimony because the ALJ discussed the issues raised by the wife's testimony in the decision). Furthermore, Mata's claim was examined using the guidelines set forth in SSR 96-7p in which the ALJ is not required to discuss Mata's chiropractic care. There is no reason to think that the ALJ would have come to a different conclusion had she mentioned Mata's chiropractic care or Mata's wife's testimony, which both supported Mata's claim of pain, because it is clear that the ALJ rejected Mata's claims of debilitating pain. Both of these pieces of evidence support only Mata's claim and do not diminish the weight of the objective medical evidence provided; therefore, the ALJ's decision is reasonable.

Furthermore, the ALJ did make reference to exhibit numbers sixteen (f) and twenty-two (f), so it is clear that the ALJ considered these exhibits. Exhibit number sixteen (f) contains the records from Dr. Gorski that predate February 1995. The ALJ refers to Mata's "lumbar laminectomy and diskectomy at levels L4/5 in September 1992 . . ." (R. at 17.) Furthermore, the ALJ makes four other references to Exhibit 16(f); in fact, it is the most relied upon exhibit in the decision. As for exhibit 22(f), the ALJ makes reference to Dr. Gorski's opinion that no additional

surgery was needed. Dr. Gorski also noted in this exhibit that Mata was unable to tolerate standing for a full days work and that he has chronic pain. These pieces of information were addressed elsewhere in the opinion; furthermore, Dr. Gorski's statements are inconsistent with the other medical evidence in the record, and it is within the ALJ's discretion to accord less weight to Dr. Gorski's opinion under the factors set forth in 20 C.F.R. § 404.1527(d). *See Clifford*, 227 F.3d at 870 (noting that treating physician's opinion will be given controlling weight unless it is unsupported by medical evidence and inconsistent with other substantial evidence in the record, such as the claimant's daily activities).

The ALJ reasonably examined the evidence and came to a reasonable conclusion supported by substantial evidence that Mata could perform light work and was therefore not disabled.

### B. The ALJ Did Not Need To Obtain Testimony Of A Medical Advisor Under SSR 83-20 Because Mata Was Not Disabled.

Mata argues that the ALJ erred by not obtaining the testimony of a medical advisor. SSR 83-20 governs determination of the onset date of disability in Title II and XVI cases. *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). SSR 83-20 describes the relevant evidence to be considered in establishing the onset date under the Social Security Act. *Id.* at 1295. When determining that an individual is disabled, the ALJ must also establish the onset date of the disability, as the onset date is critical in many cases because it can be determinative of whether or not an individual is eligible for any benefits. *Id.* In other words, the ALJ only needs to

determine the onset date of disability when the claimant is found to be disabled. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Mata relies on *Floress v. Massanari*, 181 F. Supp. 2d 928 (N.D. Ill. 2002), to illustrate that the district court may remand the case if the ALJ should have obtained the testimony of a medical advisor. However, the claimant's argument in *Floress* was that the onset date of disability was incorrectly determined. The court noted that if the medical evidence failed to indicate a precise onset date, the ALJ should refer to a medical advisor to assist in determining the date. *Id.* at 939. In this case, the ALJ did not conclude that Mata was disabled; therefore, it is not necessary for her to make a determinative finding of the onset date of disability, and she did not err in failing to obtain the testimony of a medical advisor.

### C. The ALJ's Hypothetical Question To The VE Was Reasonable and Therefore Properly Relied Upon.

Mata's final argument is that the ALJ's hypothetical question to the VE did not take into account all of Mata's medical restrictions. An ALJ does not have to include every one of the claimant's impairments in his hypothetical question to the VE regarding the jobs the claimant could reasonably perform. *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). "All that is required is that the hypothetical question be supported by the medical evidence in the record." *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). Furthermore, a showing that "the vocational expert reviewed the claimant's medical evidence and was present during the claimant's administrative hearing testimony" supports a finding that the hypothetical question is supported by the medical evidence. *Ragsdale v. Shalala*, 53 F.3d 816, 818 (7th Cir.

1995). In other words, a hypothetical question need not incorporate every aspect of the claimant's impairments so long as the record supports the conclusion that the vocational expert considered the medical reports and documents. *Herron*, 19 F.3d at 337 (the ALJ did not err in framing his question to the VE because the VE testified that he had reviewed the medical record prior to the hearing).

As stated above, the ALJ properly determined that Mata could perform light work, and in posing her question to the VE, the ALJ inquired as to what work Mata could do given his light work requirements. This was a proper hypothetical question given the ALJ's conclusion that Mata could perform light work. Furthermore, the VE had an opportunity to review the file and exhibits prior to the hearing. (R. at 43.) The VE was also present throughout the hearing and heard the testimony of both Mata and his wife. (Id.)

The ALJ's hypothetical question was reasonable, and, in addition, the ALJ could properly rely on the VE's testimony because the VE had a chance to review the file and was present during the hearing.

## V. Conclusion

For the above reasons, the Court affirms the Commissioner's final decision. The Commissioner's motion for summary judgment is therefore granted, and the Plaintiff's motion for summary judgement is denied.

ENTER ORDER:

MARTIN C. ASHMAN
United States Magistrate Judge

Dated: October 24, 2003.

Copies have been mailed to:

MR. AGUSTIN G. GARCIA  
Attorney at Law  
53 West Jackson Boulevard  
Suite 730  
Chicago, IL 60604

Attorney for Plaintiff

MR. EDWARD J. KRISTOF  
Special Assistant U.S. Attorney  
200 West Adams Street  
30th Floor  
Chicago, IL 60606

Attorney for Defendant